IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAHDI SALIH MAHDI | Case No. 1:17-mj- 597<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Robinson N. Blake, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging **Mahdi Salih Mahdi ("Mahdi")**, date of birth XX-XX-1976, with visa fraud, in violation of 18 U.S.C. § 1546(a).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March of 2009. I am currently assigned to the Richmond Division of the FBI, Charlottesville Resident Agency. During the course of my duties, I have received training in the United States Constitution, federal criminal law, and conducting criminal investigations. I have also conducted numerous counterterrorism and criminal investigations.

3. The information in this affidavit are based on my own investigation, observations, training and experience, and information obtained from other law enforcement personnel and government employees. This affidavit contains information necessary to support probable cause and is not intended to set forth every fact and matter observed by me or known to the United States Government.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 1546(a) has been committed by **Mahdi Salih Mahdi**.

## PROBABLE CAUSE

5. I have reviewed immigration documents pertaining to **Mahdi's** applications to obtain classification as a refugee and asylum status in the United States. Based on my review of Department of Homeland Security and State Department records, I am aware that in and around March 2010, **Mahdi** first registered with the United Nations High Commissioner for Refugees ("UNHCR") while in Syria, through a UNHCR Resettlement Registration Form ("RRF"). The UNHCR Resettlement Registration Form bears a photograph of **Mahdi** and also contains contact information for **Mahdi**, whose address appears as Dimashq, Saidya Zeinab, Syrian Arab Republic. Additionally, the RRF lists Syrian-based telephone number 963XXXXXX844 as **Mahdi's** mobile number contact.

6. I reviewed UNHCR case notes, which show **Mahdi** failed to complete the UNHCR refugee resettlement process. The UNHCR case notes show that on June 5, 2014; September 4, 2014; and January 15, 2015, **Mahdi** could not be reached by UNHCR. On January 15, 2015, the case notes show that after **Mahdi** was unreachable for the third time in a 6-month period, his refugee resettlement case was closed.

7. According to immigration documents I have reviewed, **Mahdi** applied for a non-immigrant tourist visa to the United States on or about July 17, 2012 and was granted the visa on February 8, 2013. **Mahdi** entered the United States on or about March 10, 2013, through Chicago, Illinois.

2

8. In and around June and July 2013, **Mahdi** submitted or caused the submission of a Form I-589, Application for Asylum and for Withholding of Removal, to the U.S. Citizenship and Immigration Services ("USCIS") located in Fairfax, Virginia, within the Eastern District of Virginia. I am aware that, in order for someone to apply for asylum in the United States, such applicants are required by immigration law to complete a Form I-589 and submit it to USCIS.

9. In Part C, Question 2.B., the Form I-589 states: "If you, your spouse, your children, your parents, or your siblings ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum." In response, **Mahdi** marked or caused the box marked "Yes" to be checked. If the applicant answered "Yes," the Form I-589 further requests the applicant to provide for each person the following: "the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so." In response, **Mahdi** provided information that his "mother is currently in the United States. She has a B-1/B-2 visa. [His] sister is also in the United States. She has a student visa". However, **Mahdi** failed to inform USCIS that he applied for refugee status while in Syria. Based on my training and experience, I suspect that **Mahdi** omitted disclosing his refugee application he filed in Syria in order to conceal his travels to or possible legal status in that country. Furthermore, based on my training and experience, as well as my conversations with other investigators in the FBI and DHS, I am aware that the omission of this information could have prevented USCIS officials from engaging in an additional inquiry that would have led to a line of questioning about **Mahdi's** refugee processing. This purpose of the inquiry would be to detect any inconsistencies in **Mahdi's** statements to immigration officials. Thus, the defendant's

misrepresentations related to the areas of inquiry outlined above are material because they have a natural tendency to influence, and are capable of persuading the decisions of U.S. immigration authorities in deciding whether to grant, continue or revoke immigration benefits.

10. On page 9 of the Form I-589, **Mahdi** signed beneath the notice instructing that the signer certifies, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Furthermore, the notice advises the signer of the penalty of perjury under Section 1746 of Title 28, United States Code, for making any false statement with respect to a material fact in any application required by United States immigration law. A photograph of **Mahdi** is also affixed to page 9 of the Form I-589.

11. On November 18, 2014, **Mahdi** was interviewed by USCIS regarding his application for asylum in the United States. The interview was conducted at the USCIS Arlington Asylum Office located on Wilson Boulevard in Arlington, Virginia, within the Eastern District of Virginia.

12. The asylum interview was conducted by a USCIS Immigration Officer in the Arabic language and utilized an Arabic interpreter.

13. At this time, **Mahdi** again affirmed through his signature that the contents of the Form I-589, including the attached documents and supplements, were all true to the best of his knowledge. **Mahdi** also confirmed any corrections made by him or at his request.

14. During the interview, the USCIS Immigration Officer asked **Mahdi** about any foreign travel he may have conducted prior to coming to the United States. A verbatim transcript of the relevant questions ("Q") and **Mahdi's** answers ("A") are as follows:

   a. Question: Did you ever travel to any other countries before you came to the US?

   Answer: No

   b. Q: So you have never left Iraq?

   A: No, the only thing is coming to America. Just was working and playing soccer.

   c. Q: At any time, were you able to reside, work, go to school, or receive any benefits in another country?

   A: No I was just living and working in Iraq.

   d. Q: Have you ever visited Afghanistan, Pakistan, Somalia, Colombia, or Syria?

   A: No.

   e. Q: Have you ever given false information to the U.S. Government?

   A: No.

   f. Q: Government records indicate that you have in fact traveled to Syria and that you applied for refugee status there in 2011. Is that correct?

   A: Never. I applied for it and then came back.

   g. Q: I asked if you had ever left Iraq and you said no.

   A: I went there with my mother she had eye surgery and I applied for refugee and I came back.

   h. Q: I specifically asked you if you had been to Syria and you said no.

   A: Before what happened I went there and after that no.

    i. Q: So why did you say no when I asked you if you had ever been to Syria?

    A: I took my mother there and I applied for refugee and they were helping people with food. Financially I was there.

    j. Q: That is not my question- why did you say you had never been to Syria when I asked you.

    A: Because I went for my mother.

    k. Q: I asked you if you had ever been to Syria and you said no. I didn't ask if you had gone there for your mother.

    A: I thought it was like I didn't go by myself for Syria I went with my mother. And she still had vision problems.

    l. Q: Why didn't you tell me you had lived in Syria?

    A: The way I understood was as if you asked if I had been in Syria by myself but I went for my mother.

15. The interview was also recorded in the form of a sworn statement, which **Mahdi** signed at the conclusion of the interview. **Mahdi** also initialed each individual page of the sworn statement.

## **CONCLUSION**

16. Based on the foregoing information, your affiant submits that there is probable cause to believe that in and around June and July 2013, and on or about November 18, 2014, in Fairfax County, within the Eastern District of Virginia, the defendant **Mahdi Salih Mahdi** knowingly made under oath, and as permitted under penalty of perjury, knowingly subscribed as true, statements which were false with respect to material facts in an application, affidavit, and other documents required by the immigration laws and regulations prescribed thereunder, and

knowingly presented such application, affidavit, and other documents that contained such false statements and that failed to contain any reasonable basis in law and fact, in violation of Title 18, United States Code, Section 1546(a).

Respectfully submitted,

Robinson N. Blake
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 12 day of December, 2017.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
UNITED STATES MAGISTRATE JUDGE